IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TAMMY JONES,                       )
                                   )
            Plaintiff,             )
                                   )
vs.                                )    Case No. 09-1061-WEB
                                   )
MICHAEL J. ASTRUE,                 )
Commissioner of                    )
Social Security,                   )
                                   )
            Defendant.             )
_____)

RECOMMENDATION AND REPORT

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties and has been referred to this court for a recommendation and report.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the

1

correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

3

to be disabled. If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

**II. History of case**

On October 6, 2008, administrative law judge (ALJ) Robert J. Burbank issued his decision (R. at 10-19). Plaintiff alleges that she has been disabled since June 5, 2006 (R. at 10). Plaintiff is insured for disability insurance benefits through

December 31, 2011 (R. at 12). At step one, the ALJ determined that plaintiff has not performed substantial gainful activity since June 5, 2006, the alleged onset date of disability (R. at 12). At step two, the ALJ found that plaintiff has the following severe impairments: fibromyalgia and migraine headaches (R. at 12). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 12). After determining plaintiff's RFC (R. at 13), the ALJ found at step four that plaintiff is unable to perform past relevant work (R. at 17). At step five, the ALJ found that plaintiff can perform other work that exists in significant numbers in the national economy (R. at 18). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 18).

**III. Did the ALJ err in his analysis of the opinions of Dr. Ryan, plaintiff's treating physician?**

The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004). When

5

a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Castellano v. Secretary of Health & Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. Robinson v. Barnhart, 366 F.3d 1078, 1083

(10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins v. Barnhart, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

After considering the above factors, the ALJ must give good reasons in his/her decision for the weight he/she ultimately assigns the opinion. If the ALJ rejects the opinion completely, he/she must then give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Dr. Ryan filled out physical RFC forms on June 26, 2007 and again on August 7, 2008. On both forms, he indicated that plaintiff's ability to sit and stand/walk was well short of the 8 hours needed to perform full-time work activity. Dr. Ryan also indicated that plaintiff's pain would require plaintiff to lie down 2 or 3 times during a workday for one hour (R. at 248-249, 298-299). The ALJ found that Dr. Ryan's opinions are not supported by substantial evidence; the ALJ noted that "Dr. Ryan's treatment notes contain very few objective findings to support

7

his opinion" (R. at 16). The ALJ stated that the lack of objective findings in Dr. Ryan's notes mirror the lack of objective findings in the consultative examination by Dr. Veloor (R. at 16); the ALJ similarly discounted Dr. Veloor's opinions[1] because of the lack of objective examination findings (R. at 15). Instead, the ALJ gave greater weight to the opinions of a non-examining physician in determining plaintiff's RFC, Dr. Inzerillo. The ALJ stated that the opinions of Dr. Inzerillo are supported by his summary and by the lack of objective findings in the record (R. at 17).

The ALJ found that plaintiff had two severe impairments, fibromyalgia and migraine headaches. However, as courts have noted repeatedly, the symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity. Gilbert v. Astrue, 231 Fed. Appx. 778, 783-784 (10th Cir. Apr. 11, 2007)(the lack of objective test findings noted by the ALJ is not determinative of the severity of fibromyalgia); Brown v. Barnhart, 182 Fed. Appx. 771, 773 (10th Cir. May 25, 2006); Sommerville v. Astrue, D. Kan. No. 06-1110-JTM, report and recommendation at 19-20, Doc. 33, July 2, 2007;

---

[1]Dr. Veloor found that plaintiff had chronic diffuse pain syndrome associated with multiple paired tender points, insomnia, and fatigue consistent with fibromyalgia. He opined that plaintiff would be "limited in her ability to hold any gainful employment due to her subjective complaints of diffuse severe pain, fatigue, and insomnia" (R. at 233).

8

affirmed by district court, Doc. 34, July 24, 2007); Priest v. Barnhart, 302 F. Supp.2d 1205, 1213 (D. Kan. 2004); Munsinger v. Barnhart, D. Kan. No. 01-1332-MLB, report and recommendation at 21, July 22, 2002; affirmed by district court Aug. 26, 2002); Glenn v. Apfel, 102 F. Supp.2d 1252, 1258 (D. Kan. 2000); Anderson v. Apfel, 100 F. Supp.2d 1278, 1286 (D. Kan. 2000); Ward v. Apfel, 65 F. Supp.2d 1208, 1213 (D. Kan. 1999). Because fibromyalgia is diagnosed by ruling out other diseases through medical testing, negative test results or the absence of an objective medical test to diagnose the condition cannot support a conclusion that a claimant does not suffer from a potentially disabling condition. Priest, 302 F. Supp.2d at 1213.

Fibromyalgia is diagnosed entirely on the basis of patients' reports and other symptoms. Brown v. Barnhart, 182 Fed. Appx. 771, 773 n.1 (10th Cir. May 25, 2006). The rule of thumb is that the patient must be positive on at least 11 of the 18 tender points to be diagnosed with fibromyalgia. Gilbert, 231 Fed. Appx. at 783; Brown, 182 Fed. Appx. at 773 n.1; Glenn v. Apfel, 102 F. Supp.2d 1252, 1259 (D. Kan. 2000). Dr. Ryan, on June 26, 2007, and again on August 7, 2008, provided forms indicating that plaintiff had 18 positive tender points (R. at 247, 301). Dr. Veloor, in his consultative examination, found that plaintiff had

9

"multiple paired tender points" (R. at 233).[2] There is no medical evidence or medical opinion evidence in the record that disputes these findings.

Furthermore, this court held in Blanton v. Astrue, Case No. 08-4010-SAC (D. Kan. Oct. 15, 2008; Doc. 19 at 12) that migraine headaches cannot be diagnosed or confirmed through laboratory or diagnostic techniques. Duncan v. Astrue, 2008 WL 111158 at *6 (E.D. N.C. Jan. 8, 2008). Migraine headaches are particularly unsusceptible to diagnostic testing. Wiltz v. Barnhart, 484 F. Supp.2d 524, 532 (W.D. La. 2006). Impairments, including migraines, need not be proven through objective clinical findings or laboratory tests. Thompson v. Barnhart, 493 F. Supp.2d 1206, 1215 (S.D. Ala. 2007); Ortega v. Chater, 933 F. Supp. 1071, 1075 (S.D. Fla. 1996). Doctors diagnose migraines through the presence of medical signs and symptoms such as nausea, vomiting, sensitivity to light and sound, and photophobia. See Duncan, 2008 WL 111158 at *6; Ortega v. Chater, 933 F. Supp. at 1075. Since present-day laboratory tests cannot prove the existence of migraine headaches, these medical signs are often the only means available to prove their existence. Ortega, 933 F. Supp.2d at 1075. Dr. Ryan indicated that symptoms associated with

---

[2]Although it is not entirely clear, it appears that Dr. Veloor identified 16 tender points. Dr. Veloor indicated that plaintiff had multiple paired tender points, and then listed eight locations; if each location had paired tender points, then he identified 16 tender points (R. at 233).

10

plaintiff's headaches included photophobia and increased sensitivity to noise (R. at 310). These symptoms are consistent with those noted in the case law cited above. No medical evidence disputes or contradicts this finding by plaintiff's treating physician.

The ALJ discounted the opinions of Dr. Ryan, plaintiff's treating physician, and Dr. Veloor, a consultative physician, because of the lack of objective findings. The ALJ relied instead on the opinion of a non-examining medical source, who is generally entitled to the least weight of all. However, Dr. Ryan found that plaintiff had 18 out of 18 positive tender points, well over the 11 needed to diagnose fibromyalgia.[3] Furthermore, Dr. Ryan found that plaintiff had symptoms consistent with a diagnosis of migraine headaches. Therefore, the ALJ clearly erred by discounting these opinions based on the lack of objective findings. This case should therefore be remanded in order for the ALJ to give proper consideration to the opinions of Dr. Ryan and Dr. Veloor, and to make new RFC findings and to reevaluate plaintiff's credibility in light of their medical opinions which provide medically valid indications of fibromyalgia and migraine headaches.

The ALJ also discounted Dr. Ryan's opinions regarding

---

[3]As noted above (see footnote 2), it also appears that Dr. Veloor identified 16 positive tender points.

plaintiff's migraine headaches because, although Dr. Ryan stated that plaintiff gets migraine headaches once a week and would not be able to function in a work setting for 2-3 hours when it occurs, Dr. Ryan also indicated on the same form that the migraines are generally controlled with medication (R. at 16, 313). In the case of Robinson v. Barnhart, 366 F.3d 1078 (10th Cir. 2004), the court held as follows:

> If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."); see also McGoffin, 288 F.3d at 1252 (holding ALJ had obligation to recontact treating physician if validity of his report open to question). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d 903, 908 (10th Cir.2001).

366 F.3d at 1084. The court in Robinson then stated that if the ALJ concluded that the treatment provider failed to provide sufficient support for his conclusions about plaintiff's limitations, the severity of those limitations, the effect of those limitations on her ability to work, or the effect of

prescribed medication on her ability to work, the ALJ should have recontacted the treatment provider for clarification of his opinion before rejecting it. 366 F.3d at 1084. In addition, SSR 96-5p states the following:

> Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make "every reasonable effort" to recontact the source for clarification of the reasons for the opinion.

1996 WL 374183 at *6.

First, it should be noted that Dr. Ryan indicated that plaintiff's migraines are "generally" controlled with medication, but still found that she gets a migraine once a week that would leave her unable to work for 2-3 hours; therefore, it is not at all clear to the court that these statements by Dr. Ryan are inconsistent or in conflict. However, if the ALJ believes that Dr. Ryan's report contains a conflict, or if the ALJ cannot ascertain the basis for Dr. Ryan's opinion that plaintiff gets migraine headaches once a week that leave her unable to work for 2-3 hours, then, on remand, the ALJ should recontact Dr. Ryan as required by the agency's regulations and rulings set forth above.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set

forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties. Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 14 days after being served with a copy.

Dated at Wichita, Kansas, on March 22, 2010.

> s/Gerald B. Cohn
> GERALD B. COHN
> United States Magistrate Judge